IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **TIWANDA RICHARDSON et al.,** | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | | CV-04-636-CG-C |
| | : | |
| **CHURPEYES, INC. et al.,** | : | |
| Defendants. | : | |

## ORDER

This cause is before the Court on the motion for court review of Tiwanda Richardson's refusal to answer questions during her deposition, through assertion of her fifth amendment privilege, and to compel answers to deposition questions filed by the defendants, Churpeyes, Inc. and Churpeyes of Alabama LLC. (Doc. 39). Upon consideration of the contents of the motion, and the plaintiff's response (Doc. 41) it is determined that the motion should be granted in part and denied in part. This motion was referred for pretrial disposition pursuant to 28 U.S.C. § 636(b)(1)(A) and SD ALA LR 72.2(c)(1).

The defendants are seeking court review of Tiwanda Richardson's assertion of her Fifth Amendment privilege and to compel answers to deposition questions pursuant to *Fed. R. Civ. P.* 37(a)(2)(B). The defendants are alleging that the privilege was improperly asserted.

This is an employment discrimination lawsuit wherein Ms. Richardson is alleging she was

sexually harassed during 2002 while employed at a Church's Chicken restaurant in Monroeville, Alabama, operated by Churpeyes of Alabama LCC, and is seeking back pay and compensatory damages. During this lawsuit, the defendants sought production of the plaintiff's tax records for the years 2000-2004 to determine her pre-employment and post-employment income and to test her damages claims and, as a result, served an initial request for production of these documents on April 29, 2005. The plaintiff did not timely produce the requested records and kept such documents in her possession until her deposition on September 23, 2005, when she produced her tax records for 2002 and testified she did not file taxes for the years 2003 or 2004.

Ms. Richardson's 2002 tax records revealed that she claimed a $1,810 "Earned Income Credit" for the 2002 tax year because she claimed two foster children lived with her for twelve months. She was asked the identity of the children's parents and replied that they were related to a girl that she worked with named Desiree; she went on to state that she did not know either Deiree's last name or the name of Desiree's mother. At this point, the plaintiff's attorney stopped the deposition in order to speak to Ms. Richardson and advised her not to incriminate herself. Upon resumption of the deposition, plaintiff's counsel instructed Ms. Richardson to refuse to answer most of the defense counsel questions and to assert her Fifth Amendment privilege against self-incrimination. (Doc. 39, Deposition of Tiwanda Richardson at 176-199). As reflected in the deposition excerpts attached to the defendants' motion to compel, at different points during the deposition counsel for both parties conferred in good faith about the scope of the assertion of the privilege and whether the plaintiff should be asserting it to every question.

The Fifth Amendment privilege against compulsory self-incrimination "'can be asserted in any

proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory . . . .'" *In re Corrugated Container Anti-Trust Litigation*, 620 F.2d 1086, 1091 (5th Cir. 1980) (quoting *Kastigar v. United States*, 406 U.S.441, 444, 92 S.Ct 1653, 1656, 32 L.Ed.2d 212 (1972)) *cert. denied sub nom. Adams Extract Co. v. Franey*, 449 U.S. 1102, 101 S.Ct 847, 66 L.Ed.2d 827 (1981). The defendants cite to *Roznovsky v. Estelle*, 546 F.2d. 1185, 1187 (5th Cir. 1977) for the proposition that "a witness may not refrain from responding to questions merely because he asserts the [Fifth Amendment] privilege. Rather,it is for the court to determine whether his silence is justified under the doctrine." While that proposition of law is certainly important, the proper legal backdrop for this Court's consideration of the plaintiff's invocation of her Fifth Amendment privilege against self-incrimination, as recognized in *In re Corrugated Container Anti-Trust Litigation*, *supra*, was first set forth in *Wehlig v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir. 1980).

> A witness may properly invoke the privilege when he "reasonably apprehends a risk of self-incrimination, . . . though no criminal charges are pending against him, . . . and even if the risk of prosecution is remote." *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1087, n.5 (5th Cir. 1979) (citations omitted).
>
> The *Wehling* test indicates that a court must ordinarily make two inquiries to determine whether a witness is entitled to assert the privilege and refuse to respond to questioning. First, the court must determine whether answers to the questions might tend to reveal that the witness has engaged in criminal activities. If the answers could not be incriminatory, the witness must answer. *Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972). If answering the questions might incriminate the witness, the court must ask whether there is a risk, even a remote risk, that the witness will be prosecuted for the criminal activities that his testimony might touch on. As the Seventh Circuit recently observed:
>
>> (This determination does not depend) upon a judge's prediction of the likelihood of prosecution. Rather, . . . it is only when there is but a fanciful possibility of prosecution that a claim of fifth amendment

3

> privilege is not well taken. . . . When a witness can demonstrate any
> possibility of prosecution which is more than fanciful he has
> demonstrated a reasonable fear of prosecution sufficient to meet
> constitutional muster.
>
> *In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 871 (7th Cir.1979)
> (citations omitted).

*In re Corrugated Container Anti-Trust Litigation, supra*, 620 F.2d at 1091-1092; *see also United States v. Cuthel*, 903 F.2d 1381, 1384 (11th Cir. 1990) ("A witness may properly invoke the privilege when he 'reasonably apprehends a risk of self-incrimination, . . . though no criminal charges are pending against him. . . . and even if the risk of prosecution is remote.'")

In considering the questions not answered by Ms. Richardson, it is clear to the undersigned that the plaintiff has met both requirements of the *Wehling* test with respect to the questions posed by defense counsel on pages 179 through 181, 185 through 187, 189, and 191 through 193.[1] Specifically, the undersigned finds that the answers to the questions posed on these pages might tend to reveal that Ms. Richardson has engaged in criminal activities, such as violating certain IRS provisions or codes. Moreover, there appears to be substantial risk that Ms. Richardson could be prosecuted for tax fraud. Accordingly, this court will not compel plaintiff to answer these questions.[2]

---

[1] While plaintiff initially claimed the Fifth Amendment privilege with respect to questions posed to her regarding how she knew Desiree (*see* Richardson depo, at 176-178) she eventually answered those questions (*id* at 196-198). Accordingly, this Court has no reason to compel further answers from plaintiff with respect to Desiree. This finding goes to the question regarding who the mother of the two children is inasmuch as Ms. Richardson clearly let slip that Desiree is the mother of these two children. (*Id.* at 198).

[2] The defendants are entitled to answers from Ms. Richardson regarding the identity of Cheryl Banks and how she knows Banks. These innocuous questions would not incriminate Ms. Richardson. If the defendants do not know who Banks is or how Ms. Richardson knows Banks they may pose such questions to Richardson via a supplemental telephone deposition limited solely to those two questions.

## **CONCLUSION**

In conclusion, since it appears that the plaintiff could face charges for tax fraud, a federal crime, she is within her rights to assert her Fifth Amendment privilege in the case at hand with respect to the majority of questions posed to her by the defendants to which they now are trying to compel her testimony. For the abovementioned reasons, the plaintiff will not be compelled to answer the deposition questions to which she asserted the privilege, save those questions related to the identity of Cheryl Banks and how Ms. Richardson knows Banks. As a result, the defendants' motion to compel (Doc. 39) is **GRANTED IN PART AND DENIED IN PART**; the plaintiff need answer in any subsequent telephone deposition only the questions related to the identity of Cheryl Banks and how the plaintiff knows Banks.

**DONE** and **ORDERED** this 21st day of November 2005.

> s/WILLIAM E. CASSADY
> UNITED STATES MAGISTRATE JUDGE